HowRY, J.,
delivered the opinion of the court :
This is a claim arising under the Indian depredation act of March 3, 1891, 26 Stat., 851, for the loss of property valued (according to the petition) at something over $11,000. As presented on the merits, the issues relate entirely to the matter of title and ownership of the property at the time of the alleged taking. Plaifttiff contends that judgment can be rendered on what is known in New Mexico as a partido contract, whilst defendants deny on the facts as presented that plaintiff had any such ownership or title as will warrant a judgment.
Being unable now to consider the merits, this opinion is deemed necessary to cover the court’s view of an underlying question relating to jurisdiction. There is involved the statute of limitations, creating by lapse of time a jurisdictional *221 bar, inasmuch as in a matter like that before us the statute makes the limitation jurisdictional.
The records show that the administrator of Antonio Jose Otero filed four cases in this court- for the alleged depredations of Indians — three against the Navajo Tribe and one against the Apache Indians — and all so framed as to embrace the guaranty of the United States. The present case is against the Apaches and the Government, as the guarantor, under the terms of the law.
The act of March 3, 1891, supra, in section 2 contains a proviso for claims of the present class as follows:
“ That no claim accruing prior to July first, eighteen hundred and sixty-five, shall be considered by the court unless the claim shall be allowed or has been or is pending, prior to the passage of this act, before the Secretary of the Interior or the Congress of the United States, or before any superintendent, agent, subagent, or commissioner authorized under the act of Congress to inquire into such claims; but no case shall be considered pending unless evidence has been presented therein.”
The word “ evidence ” has a well-known significance, entirely independent of the pleadings, and means competent evidence, such as documents properly authenticated and proved or oral testimony taken under the forms of law. Weston v. United States, 29 C. Cls. R., 420.
On July 14, 1891, the Commissioner of Indian Affairs transmitted to this court the depredation claim of Antonio Jose Otero, No. 5458, as stated to have been filed in that office August 19, 1889, with certain original papers, consisting (1) of an affidavit of Manuel R. Otero, describing himself as the son of Antonio R. Otero, deceased, and from which it appears that the claim of the father was made prior to the original claimant’s death, but, according to a further allegation of the affiant, it had been “ in some way or other * * * mislaid and was not found until recently, among papers belonging to Antonio Jose Otero.” With this affidavit, sworn to August 10, 1889, there was transmitted what the affiant said was evidence to prove the fact of the depredations, without describing what the evidence was. The affiant claims as the *222 legal heir of the deceased. There appear to have accompanied the administrator’s affidavit certain other papers, to wit: (2) The affidavit of Antonio Jose Otero, “ by his attorney,” S. M. Baird, showing on its face to have been addressed to James L. Collins, described as superintendent of Indian affairs in and for the Territory of New Mexico. There is no mark of any kind on this affidavit to show filing anywhere. This paper bears date December 10, A. D. 1856, and appears to have been signed by the original claimant before Kirby Benedict, associate justice of the Supreme Court of the Territory of New Mexico and judge of the third judicial district, and sworn to January 19,1858. There is no mark to show the filing of this paper in any office. Nor is there any seal of office attached of the person before whom it appears to have been made. Neither is there authentication of any kind by the judge whose name appears on the face of the said paper. (8) Papers purporting to be the affidavits of Jose Eafel Sanches and of Jose Sanchez. Both of these papers are signed “his mark.” Both appear to have been declared before Kirby Benedict, “ associate justice of the Supreme Court of the Territory of New Mexico and judge of the third judicial district, at Albuquerque.” There is no seal attached to either one of these papers, nor other mark of authentication. The blank piece of paper transmitting the alleged affidavits of the last two affiants is stamped as follows: “23156. Indian Office, 1889. Indos. No. 2.” Then these purported affidavits likewise bear the stamp as follows: “ Department of the Interior, Indian Div. 4060. Eecd, July II, 1891.”
The dates of the two affidavits appear to have been January 17, 1858. They are presumably the same referred to in the letter dated July 14, 1891, of the Commissioner of Indian Affairs. These purported affidavits on their face contain no filing date and have no file mark; but, together with the original application, are surrounded with a blank sheet of paper containing the indorsements hereinbefore set forth.
Unless this original application of the deceased Otero— which bears no file mark by the superintendent to whom it was addressed and seems never to have come to the posses *223 sion of the superintendent to whom it was sent — was filed in the Indian Office at the proper time, and unless the papers purporting to be affidavits of Jose Rafel Sanches and Jose Sanchez, made in 1858, are in such form as to render them competent as evidence, then the court is without jurisdiction. These documents, purporting to be sworn to, appear to be merely paper not properly authenticated by seal or certificate of official authority on the part of the person before whom they purport to have been acknowledged. As thus offered the court on this ground alone doubts too much the right of the petitioner to have these papers considered “legal evidence” within the meaning of the act under which the action was brought to warrant judgment against the defendants.
There is another difficulty in the way arising out of the insufficiency of the affidavit of one of the witnesses, two affidavits being necessary. Jose Rafel Sanches appears to have sworn, January 17, 1858, to certain matters connected with the alleged depredation. The court is of opinion that the name of this witness, who signed by mark, is in the same handwriting as that of the associate justice before whom the affidavit purports to have been made. There are no witnesses to the signature. Furthermore, the witness undertakes merely to state that he was “ advised ” by his shepherds that the Indians had entered his ranch and carried away the flock of sheep. He identifies no tribe. He does say that he pursued, following a trail into the country inhabited by the Grila Apaches, but that he failed to overtake any Indians. So he saw no Indians at all and returned with his party. The affidavit is the equivalent of a hearsay declaration.
By the act of 1872 one affidavit was held to be deficient in substantially all the requirements of the rules prescribed by the Secretary of the Interior. Butler v. United States, 88 C. Cls. R., 167.
In Nesbitt's ease, 186 U. S., 153, it appeared among the papers that there were “ other persons having knowledge of the depredation.” This likewise was held insufficient. In Weston v. United States, 29 C. Cls. R., 420, this court held *224 that the case of Nesbitt and that of Weston were in legal essence the same as Butler’s case and could not be differentiated without destroying the legal effect of the doctrine of stare decisis.
The court is unable to see any distinction on this point between the rules prescribed under the act of 1872 and those rules prescribed under the act of 1885.
Nor can the court accept the alleged sworn declaration made by the deceased claimant because of the want of identification of the paper as an application and the placing of the same in the Indian Office at the proper time. The affidavit bears no file mark, and in transmitting the papers from the Department of the Interior there is nothing in the certificate of the Commissioner of Indian Affairs to indicate when the alleged affidavit became a public file.
The court is unwilling to pass this case to judgment on the record as it stands. ' It is not proposed, however, to deprive the claimants of the opportunity to make such a showing as they properly can in the prosecution of the claim for whatsoever of merit claimant thinks the case has. For this reason the court returns the papers to the calendar with the accompanying memorandum, by which the parties will be governed in the prosecution and defense of the claim.
The case is accordingly remanded.